## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERNADETTE SNEAD,** **AS PARENT/GUARDIAN OF C.S.,** **Plaintiff,** **v.** **DISTRICT OF COLUMBIA,** **Defendant.** | **Civil Action No. 1:15-cv-00376 (ESH)** |

## <u>MEMORANDUM OPINION</u>

Plaintiff Bernadette Snead brings this action against the District of Columbia to recover attorney's fees and costs related to her successful administrative proceeding on behalf of her son under the Individuals with Disabilities Education Act of 2004. 20 U.S.C. §§ 1400, *et seq.* ("IDEA"). The parties have submitted cross-motions for summary judgment, disagreeing primarily over the reasonableness of the hourly rates charged by plaintiff's two attorneys— Carolyn Houk and Stevie Nabors. *See* 20 U.S.C. § 1415(i)(3)(C) (defining as reasonable those "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished"). Plaintiff seeks a total of $67,624.90 in fees for the legal services of Ms. Houck—for whom plaintiff submits a rate of $460 per hour based on the USAO Laffey Matrix—and Mr. Nabors, for whom plaintiff submits a rate of $328 per hour based on the customary rates charged by Mr. Nabors and the so-called LSI (or "enhanced") Laffey Matrix. (Plaintiff's Motion for Summary Judgment, June 19, 2015, ECF No. 10 ("Pl.'s Mot."), at 7-8.) The District contends that Ms. Houk and Mr. Nabors should be reimbursed at no more than ¾ the

rate allotted to them under the USAO Laffey matrix, for a maximum award of $50,169.51. (Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment, July 17, 2015, ECF No. 12 ("Def.'s Cross-Mot."), at 14.) For the reasons explained herein, the Court agrees that a reduced USAO Laffey rate is appropriate for the legal services provided here, and therefore, it will grant defendant's cross-motion for summary judgment.

## BACKGROUND

Plaintiff is the mother of C.S., a student eligible to receive special education and related services under the IDEA. On November 18, 2014, Hospitality Public Charter School called plaintiff to a meeting to inform her that it had decided to expel C.S.[1] (Pl.'s Mot., Ex. 1, Hearing Officer's Determination ("HOD"), at 2.) On November 25, 2014, the school held a Manifestation Determination Review ("MDR") and concluded that the behavior that had precipitated C.S.'s expulsion was not a manifestation of his disability. (*Id.* at 2.) Plaintiff proceeded to file a due process complaint on December 30, 2014, alleging that District of Columbia Schools ("DCPS") and the Office of the State Superintendent of Education ("OSSE") denied C.S. a free appropriate public education ("FAPE") by failing to determine that C.S.'s behavior was a manifestation of his disability and to develop and implement an individual education program for C.S. for the 2013-2014 and 2014-2015 school years. (*Id.*)

OSSE and DCPS each filed timely responses to the complaint and filed a joint motion to dismiss on January 8, 2015.[2] (*Id.*) The parties held a number of conference calls with the

---

[1] The school had suspended C.S. for a single day on November 17, 2014, and plaintiff initially believed the meeting on November 18, 2018, was meant to discuss a plan for C.S.'s "re-entry."

[2] It appears from the pleadings that the joint motion argued that DCPS was not the local education agency ("LEA") for the school in question, as required by the IDEA, (*see* Pl.'s Mot. at 9), although the record is ambiguous as to the basis for the motion.

Hearing Officer, and attempted, without success, to come to a resolution.  (*Id.* at 2-3.)  The Hearing Officer issued a pre-hearing order on January 15, 2015, outlining the issues to be adjudicated at the hearing.  (*Id.* at 3.)  On January 26, 2015, plaintiff filed a motion for summary adjudication of the MDR issue.  (*Id.*)  The Hearing Officer subsequently denied the joint motion to dismiss on January 29, 2015, and reserved plaintiff's motion for summary adjudication on the MDR for the hearing.  (*Id.*)  On January 30, 2015, DCPS filed an amended response to the complaint conceding that DCPS was the LEA for C.S.'s school for special education purposes. (*Id.*)  Plaintiff immediately filed a motion to strike the amended response and to request a more definite statement, to which DCPS responded on February 1, 2015, by acknowledging that DCPS was indeed the LEA for C.S. at the time of the incident for which he was expelled.  (*Id.*)

At the hearing on February 2, 2015, the parties submitted documents; most were admitted into the record, while others were withdrawn and a few were set aside pending presentation of testimony.  (*Id.* at 3 n.4.)  After DCPS clarified for the record that it had reversed its original MDR determination of November 25, 2014, and had determined that the conduct for which C.S. had been expelled was in fact a manifestation of his disability, the Hearing Officer ruled in plaintiff's favor, stating that C.S. had been denied a FAPE.  (*Id.* at 3.)  The Hearing Officer allowed the parties to engage in settlement discussions and their settlement was incorporated into a comprehensive Consent Order on February 6, 2015.[3]

Plaintiff now seeks attorney's fees for Mr. Nabors and Ms. Houk, both of whom assisted in her achieving prevailing party status. (Pl.'s Mot., Ex. 2, Houk Declaration ("Houk

---

[3] The Consent Order included the following remedies: DCPS agreed to fund an independent, comprehensive psychological evaluation of C.S. and an allotted number of tutoring and behavioral counseling hours and to place and fund C.S. at a separate school for the 2014-2015 school year. OSSE agreed to issue a location of services letter for Village Academy for the 2014-2015 school year and to remove the expulsion from C.S.'s record. (HOD. at 4.)

Declaration") at 3 (explaining that plaintiff required two attorneys to successfully litigate plaintiff's claim against both OSSE and DCPS, which were presenting independent defenses); Pl.'s Mot., Ex. 6, Invoice.)[4]

## ANALYSIS

The only disputed issue is what constitutes a reasonable hourly rate for the two attorneys who litigated plaintiff's IDEA claim.  Fee awards under the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose, *for the kind and quality of services furnished*." 20 U.S.C. § 1415(i)(3)(C) (emphasis added).  The statute also instructs that courts "shall reduce" the quantity of the award if it "unreasonably exceeds the hourly rate . . . for similar services by attorneys of reasonably comparable skill, reputation, and experience" in the community.  *Id.* at § 1415(i)(3)(F)(ii).  The D.C. Circuit has explained that the "fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates," which entails "produc[ing] satisfactory evidence—in addition to [their] attorney's own affidavits—that [their] requested rates" are appropriate. *Covington v. District of Columbia*, 57 F.3d 1101, 1107-08 (D.C. Cir. 1995).  Applicants may "submit attorneys' fee matrices as one type of evidence that provides a useful starting point in calculating the prevailing market rate" for attorneys' services. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (internal quotation marks and citations omitted).  A fee matrix lays out hourly fees charged by attorneys at various levels of experience in a particular geographic region or market for the same type of work. "Fee matrices in general are 'somewhat crude,'" including "the Laffey matrix in particular," and "[f]or this reason, a fee applicant supplements

---

[4] While the District does not challenge the need for two attorneys, it is far from clear from the record why this was necessary—Ms. Houk's justification notwithstanding.

fee matrices with other evidence such as surveys to update them; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* at 101.

The "most commonly used fee matrix is the 'Laffey matrix,'" *id.*, established in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). The Laffey Matrix, however, proposes a presumptive maximum for "complex federal litigation." *Id.* at 372. There are two variations of Laffey matrices: the primary one ("USAO Laffey") is calculated by the United States Attorney's Office for the District of Columbia and is updated regularly to account for inflation using the Consumer Price Index, and the second is often referred to as "enhanced Laffey" or "LSI Laffey" and is adjusted for inflation using only the legal services component of the Consumer Price Index, which has risen more swiftly than the general CPI. *See Eley*, 793 F.3d at 101-02.

Recently, the D.C. Circuit declined to categorically determine whether IDEA proceedings constitute the type of litigation that is "sufficiently 'complex' to use either version of the Laffey Matrix (and if so, which version of the *Laffey* Matrix is more appropriate)." *Id.* at 105. The *Eley* Court did, however, make clear that Laffey should not be the default rate for fees awarded pursuant to IDEA. *See id.* (holding that district courts may not begin their analysis from the premise that "some version of the Laffey matric is presumptively reasonable"). If a party wishes the Court to use the Laffey matrix, it must establish that its rates reflect what attorneys of comparable skill in the region generally charge for IDEA proceedings.

Prior to *Eley,* district courts within this circuit were split on whether Laffey applied to IDEA cases. *Compare Baker v. D.C. Pub. Sch.*, 815 F. Supp. 2d 102, 112-13 (D.D.C. 2011)

("This court has previously held that attorney's fees in IDEA actions are presumptively reasonable if they conform to the Laffey Matrix . . .[and] has already rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation.") *with Huntley v. District of Columbia*, 860 F. Supp. 2d 53, 58 (D.D.C. 2012) ("[T]his case involves IDEA litigation, which is not complex federal litigation because most if not all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearings."); *see also McClam v. District of Columbia*, 808 F. Supp. 2d 184, 189 (D.D.C. 2011) ("Federal district courts in this circuit disagree whether Laffey rates should be applied in IDEA cases.").

Since *Eley,* however, courts in this jurisdiction have interpreted the decision as strongly suggesting that IDEA matters are infrequently comparable to complex federal litigation, and therefore, full Laffey rates should not be awarded in such cases. *See, e.g.*, *Reed v. District of Columbia*, No. 14-1887, 2015 WL 5692871, at *10 (D.D.C. Sept. 18, 2015); *Tillman v. District of Columbia*, No. 14-1542, 2015 WL 5011656, at *6 (D.D.C. Aug. 24, 2015); *Jones v. District of Columbia*, No. 15-155, 2015 WL 5093559, at *5-6 (Aug. 18, 2015); *District of Columbia v. Kirksey-Harrington*, No. 14-180, 2015 WL 5014144, at *7-8 (Aug. 18, 2015).[5]

This Court finds Judge Boasberg's recent reading of *Eley* in his decision in *Reed v. District of Columbia* to be particularly persuasive. As Judge Boasberg notes, *Eley* appears to instruct "that the relevant inquiry is whether IDEA proceedings *as a class of litigation* qualify as

---

[5]    Plaintiff cites a number of pre-*Eley* cases in this jurisdiction that awarded full Laffey rates in IDEA litigation, (*see* Pl.'s Mot. at 7), but this Court sees no need to distinguish authorities decided prior to the D.C. Circuit's recent clarifying opinions on the subject.
      There appears to be only one post-*Eley* decision in our jurisdiction that has awarded full Laffey rates for IDEA proceedings—a case where the magistrate judge deemed defendant to have conceded the issue of complexity. *See Gaston v. District of Columbia*, No. 14-1249, 2015 WL5029328, at *5 n.9 ("Defendant, in its opposition to Plaintiff's motion, does not contest Plaintiff's characterization of the underlying administrative proceedings as 'complex': for that reason alone, the Court has discretion to deem Plaintiff's characterization as conceded.")

'complex federal litigation.'" *Reed,* 2015 WL 5692871, at *9; *see also Price v. District of Columbia,* 792 F.3d 112, 116-17 (D.C. Cir. 2015) (Brown, J., concurring) (opining that, because IDEA proceedings do not constitute complex federal litigation, "the Laffey Matrix rate . . . is also an irrelevant benchmark for administrative proceedings before a D.C. Public Schools hearing officer").

Judge Boasberg's conclusion that, as a general matter, administrative IDEA proceedings are qualitatively dissimilar to complex federal litigation is demonstrably sound. *See Rooths v. District of Columbia,* 802 F. Supp. 2d 56, 63 (D.D.C. 2011) ("Like most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little evidence, and no novel or complicated questions of law. It was presented in a reasonably informal setting to an administrative Hearing Officer in a two-hour hearing. . . . [so] a rate considerably below the Laffey maximum is appropriate."). In addition to the lengthy Title VII litigation at the heart of *Laffey,* the Supreme Court has indicated that other civil-rights litigation – including challenges to unreasonable searches and seizures, school-desegregation cases, and employment-discrimination actions—as well as antitrust suits are the prototypes of complex federal litigation. *See Blum v. Stenson,* 465 U.S. 886, 893-94 (1984) (listing cases described in legislative history of § 1988 as "equally complex Federal litigation").

Plaintiff contends that IDEA cases are "inherently and sufficiently" complex in their own way, as they "require specialized knowledge of the bureaucratic workings of school systems," as well as familiarity with "a vast array of disorders and related therapeutic and educational responses." (Pl.'s Mot. at 15.) This Court does not doubt that IDEA litigation poses its own set of challenges, but such challenges are irrelevant to the comparison between IDEA administrative processes and complex federal litigation. Still, given that the Court of Appeals has yet to

categorically preclude all IDEA litigation from qualifying as "sufficiently complex," the Court thinks it prudent to adopt a flexible approach, and permit IDEA plaintiffs like Ms. Snead the opportunity to establish the applicability of Laffey by proffering evidence that *their* IDEA proceeding was unusually complex. Plaintiff has produced no such evidence.

Contrary to plaintiff's assertions, the representation provided by Ms. Houk and Mr. Nabors in the administrative proceeding fell comfortably within the ambit of common IDEA litigation. Put simply, this was a relatively straightforward, routine administrative hearing uncomplicated by burdensome questions of law or fact. There was no formal discovery, no lengthy argument, limited motion practice, and a single informal hearing before a Hearing Officer with relaxed rules of evidence. Under such circumstances, district courts in this jurisdiction have declined to award full Laffey rates. *See, e.g.*, *Brighthaupt v. District of Columbia,* 36 F.Supp.3d 1, 4-5 (D.D.C. 2014) (none of the three cases was complex, but instead, they proceeded in a "fairly routine fashion"); *McAllister v. District of Columbia,* 21 F.Supp. 3d 94, 110 (D.D.C. 2014) (hearings at issue lacked complexity, there were few or no witnesses, and limited contested issues); *Wright v. District of Columbia*, No. 11-384, 2012 WL 79015, at *4 (D.D.C. Jan. 11, 2012) (matter involved a one day, routine hearing).

Yet, plaintiff maintains that this matter is significantly more complex than ordinary IDEA litigation for two reasons: first, she contends that it involved the novel legal issue of establishing LEA responsibility for a charter school placed directly under OSSE control. (Pl.'s Mot. at 15.) The issue may have been somewhat unusual, but as far as the Court can tell, it was resolved by an amended response from DCPS and a single motion to strike—hardly a paradigm-shifting exchange. Plaintiff also contends that the case was made needlessly complex due to the District's "bad faith arguments." (Pl.'s Mot. at 9.) Even assuming *arguendo* that the record

reflected such behavior—and it does not—a party's lack of cooperation is not a terribly unusual occurrence in litigation of any stripe, and such conduct does not inform our principal inquiry: does the case qualify as complex federal litigation?

The declarations filed by Mr. Nabors and Ms. Houk are equally unavailing. They rely upon their own billing practices and the Laffey matrices and fail to offer evidence that IDEA administrative proceedings are subject to the same hourly rates that prevail in complex federal litigation. Mr. Nabors' argument that his firm was forced to charge the higher LSI Laffey rates by a hailstorm of "predatory tactics" from the District—namely, conditioning settlement offers on acceptance of nominal fees—is unpersuasive. *See Kirksey-Harrington*, 2015 WL 5014144, at *6 (justification was insufficient where "the fee increase was admittedly designed to 'counter' certain practices by the District; namely, conditioning settlement offers on acceptance of nominal fees" and was therefore unrelated to prevailing rates in the community); *see also Eley*, 793 F.3d at 104 (plaintiff's evidentiary submission consisting of "the LSI Laffey Matrix, [a] declaration explaining the LSI Laffey Matrix and her lawyer's verified statement averring that he charged his paying clients the rates in the Laffey Matrix" was insufficient to demonstrate that her requested rates were the rates prevailing in the community for similar services). Indeed, the *Eley* Court commented specifically on the lack of any precedent in this jurisdiction for awarding LSI Laffey rates in IDEA cases. *Id.* at 104.

Given that full Laffey rates are not appropriate for legal representation in IDEA administrative proceedings such as occurred here, the question inevitably becomes: What rate is appropriate for the type of legal services Mr. Nabors and Ms. Houk have provided? The District proposes an award of 75% USAO Laffey Matrix levels—and an overwhelming number of district courts have found such a rate to approximate the prevailing rate for IDEA administrative

proceedings. *See, e.g.*, *Reed*, 2015 WL 5692871, at *13; *Tillman*, 2015 WL 5011656, at *6; *Jones*, 2015 WL 5093559, at *5-6; *Kirksey-Harrington*, 2015 WL 5014144, at *8; *Brown v. District of Columbia*, 80 F. Supp. 3d 90, 98 (D.D.C. 2015); *Briggs v. District of Columbia*, 73 F. Supp. 3d 59, 63-64 (D.D.C. 2014); *Douglas v. District of Columbia*, 67 F. Supp. 3d 36, 42-43 (D.D.C. 2014); *McAllister*, 53 F. Supp. at 60-61; *Haywood v. District of Columbia*, No. 12-1722, 2013 WL 5211437, at *6 (D.D.C. Aug. 23, 2013); *Davis* v. *District of Columbia*, 864 F. Supp. 2d 110, 119 (D.D.C. 2012); *Flores v. District of Columbia*, 857 F. Supp. 2d 15, 22 (D.D.C. 2012).

The Court agrees with the District, as well as those members of this Court who have taken up the question since the D.C. Circuit's *Eley* decision: three-fourths of USAO Laffey rates is an appropriate metric for an unremarkable IDEA administrative representation.

## CONCLUSION

The Court therefore awards attorney's fees at an hourly rate of $345 per hour for Attorney Houk and $191.25 per hour for Attorney Nabors, and reimburses each attorney's travel time at half the aforementioned hourly rates, *see Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 77 (D.D.C. 2011) (travel time is compensated at half the attorney's rate), arriving at a total award of $50,169.51 to plaintiff. Plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. A separate Order accompanies this Memorandum Opinion.

/s/   Ellen Segal Huvelle
ELLEN SEGAL HUVELLE
United States District Judge

Date:   October 7, 2015